UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CAITLIN SECAMIGLIO, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 20-305-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NORMA HOPE BAKER, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

Defendant Norma Baker[1] has filed a motion to dismiss all counts contained in the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Record No. 82]  Baker argues that the Amended Complaint fails to meet the heightened pleading standards required under Rule 9(b), and in False Claims Act ("FCA") cases more generally.  Relator Secamiglio opposes the motion and seeks leave to file a Second Amended Complaint [Record No. 85].  Additionally, the relator requests an order directing the deposition of Erica Baker [Record No. 86].

Secamiglio's motion to file a Second Amended Complaint will be denied for the reasons outlined below.  Next, her motion for an order directing the deposition of Erica Baker will be denied as premature.  Finally, Baker's motion to dismiss will be granted, in part, and denied, in part.

---

[1]     All references to "Baker" in this Memorandum Opinion and Order refer to Defendant Norma Hope Baker.  Now-dismissed Defendant Erica Baker will be referenced by her full name.

## I. Background

Secamiglio filed her first Complaint on July 14, 2020, naming as defendants LabTox, LLC ("LabTox"), Ron Coburn, Norma Hope Baker, and Erica Baker. [Record No. 1] On August 19, 2021, the United States filed a Complaint-In-Intervention solely with respect to Defendants LabTox, Coburn, and Erica Baker. [Record No. 21] Secamiglio then filed an Amended Complaint on January 18, 2022, which retained Baker as a defendant. [Record No. 49] On January 25, 2022, the undersigned stayed this action pending completion of the related criminal matter.[2] [Record No. 53]

The stay was lifted in this matter on December 14, 2023. [Record No. 70] On February 14, 2024, Secamiglio moved for an entry of default against Baker. [Record No. 74] That same day, a Stipulation of Agreed Judgement was submitted by the United States and Defendants LabTox, Coburn, and Erica Baker. [Record No. 76] The Court granted the stipulation and entered an Agreed Order of Judgment on February 15, 2024. [Record No. 77] The judgment dismissed the United States and Defendants LabTox, Coburn, and Erica Baker, while expressly maintaining Secamiglio's claims against Baker.

On February 27, 2024, the Court issued a Memorandum Opinion and Order denying Secamiglio's motion for default and providing Baker with additional time to respond to the Amended Complaint. [Record No. 80] Baker moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) on March 8, 2024. [Record No. 82] That motion was fully briefed as of April 10, 2024. However, on April 26, 2024, Secamiglio moved for leave to file a Second

---

[2]     *See United States v. Baker*, No. 22-cr-004 (E.D. Ky. filed Jan. 13, 2022).

Amended Complaint and for an order directing the deposition of now-dismissed Defendant Erica Baker.  [Record Nos. 85, 86]

## II. Leave to Amend

Because Baker's Rule 12(b)(6) motion seeks to dismiss the Amended Complaint, a Second Amended Complaint would render Baker's motion moot.  *See Ky. Press Ass'n, Inc. v. Kentucky,* 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005) ("Plaintiff's amended complaint supercedes the original complaint, thus making the motion to dismiss the original complaint moot.") (citing *Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 306 (6th Cir. 2000)). Further, the Federal Rules of Civil Procedure provide that courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This standard is generally liberal, aimed at ensuring that cases are decided on their merits rather than on procedural technicalities. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court considers several factors in determining whether leave to amend should be denied.  These factors include undue delay, bad faith, prejudice to the opposing party, previous failures to cure deficiencies, and the futility of amendment.  *See id.*

### A.  Undue Delay

Undue delay may be found where the facts or allegations sought to be added to a complaint were available at the time of the initial complaint or any subsequent amendments. *See Doe v. Mich. State Univ.*, 989 F.3d 418, 426 (6th Cir. 2021).  Undue delay may also exist where a long-pending case attempts to introduce "novel substantive arguments" through an amended complaint.  *See Pedreira v. Ky. Baptist Homes for Child., Inc.*, 579 F.3d 722, 729 (6th Cir. 2009) (finding that leave to amend was properly denied where the amended complaint

would introduce novel substantive arguments into a case that had been pending for almost seven years).

The Amended Complaint in this case was filed on January 18, 2022, and Secamiglio moved for leave to amend more than two years later (on April 26, 2024). [Record Nos. 49, 85] That period, however, fails to account for the stay that was in effect between January 25, 2022, and December 14, 2023. [Record Nos. 53, 70] Accounting for the stay, Secamiglio has had approximately four months within which to amend her complaint. That period is not overly prolonged. *See Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986) (noting that "delay alone, regardless of its length is not enough to bar amendment") (cleaned up).

The Court next considers whether undue delay results from the omission of readily available facts or allegations from the Amended Complaint. The Amended Complaint and proposed Second Amended Complaint focus on the same general scheme and broad allegations but take a significantly different posture with respect to Baker's overall involvement. Considering that this is an FCA complaint which must be pleaded with specificity, the sudden factual changes give reason for pause. This is particularly so because the Amended Complaint purports to "set out in detail" certain claims as they relate to Baker specifically. [*See* Record No. 49, ¶¶ 14, 17.]

Baker is described and characterized primarily in the Amended Complaint as the "nominee owner" of LabTox and wife of Coburn. [*Id.* ¶ 7] The substantive FCA allegations levied against Baker are largely confined to two paragraphs where she is alleged to have directed Coburn and Erica Baker to submit false claims.[3] [*Id.* ¶¶ 170, 174] A large part of the

---

[3] Secamiglio argues that references to "Defendants" incorporates Baker. This argument is addressed below in Section IV.A.1.

Amended Complaint focuses on carefully describing the overall fraudulent scheme and providing discrete examples of actions taken by, or at the direction of, Coburn and Erica Baker, acting as agents of LabTox.  The Government's Complaint-In-Intervention does the same.

But after the United States resolved the claims asserted against LabTox, Coburn, and Erica Baker, the proposed Second Amended Complaint changes course.[4]  Baker is no longer portrayed as the "nominee owner" of Labtox but as "owner and operator," who "participated in and supervised LabTox's operations in conjunction with her husband Rob Coburn." [Record No. 85-1, ¶ 32] One is not a nuance of the other; instead, the claims are contradictory. Secamiglio is a former employee of LabTox who previously attested to her "direct and independent knowledge of the facts underlying the [Amended Complaint]."  [Record No. 49, ¶ 5] These allegations could have -- and should have -- been raised from the beginning.  Absent some justification for the earlier omission (or mischaracterization), there is sufficient basis to find undue delay.

## B.  Bad Faith

The Court may also deny leave to amend when it believes the motion to be a bad faith attempt to manipulate the judicial process.  And amending needlessly in an effort to avoid an unfavorable ruling may be tantamount to a finding of bad faith.  Secamiglio's motion to amend was filed only after Baker's motion to dismiss had been fully briefed and was pending for a ruling.  In the motion, Secamiglio affirms the adequacy of the Amended Complaint while asking the Court to nonetheless moot Baker's motion to dismiss because the proposed Second

---

[4]   Baker is referenced only twenty-four times in the 68-page Amended Complaint.  In the 69-page proposed Second Amended Complaint she is referenced by name over one hundred times.

Amended Complaint makes the allegations "exceedingly clear."  [*See* Record No. 85, ¶ 5.] But that is far from what it does.

The proposed Second Amended Complaint takes, verbatim, allegations set forth in the United States' Complaint-In-Intervention and swaps out the name of person against whom the allegation is made.  Consider, for example, the following allegation from the United States' Complaint-In-Intervention:

> 315. From approximately March 2019 to April 2021, LabTox submitted, and [Erica] Baker and Coburn caused to be submitted, at least 11,418 false claims to the Government Healthcare Programs for urine drug tests with O.J. listed as the ordering provider and performed for Blue Waters' clients. The claims were false because they were not medically necessary and because they were performed pursuant to improper blanket orders signed by a medical provider who did not treat Blue Waters' clients. The Government Healthcare Programs paid LabTox over $1.8 million on these claims, which they would not have paid if they had known of the claims' falsity.

[Record No. 21, ¶ 315]  Then compare the above to the corresponding allegation in Secamiglio's proposed Second Amended Complaint:

> 257. From approximately March 2019 to April 2021, LabTox submitted, and Defendant Norma Baker caused to be submitted, at least 11,418 false claims to the Government Healthcare Programs for urine drug tests with O.J. listed as the ordering provider and performed for Blue Waters' clients. The claims were false because they were not medically necessary and because they were performed pursuant to improper blanket orders signed by a medical provider who did not treat Blue Waters' clients. The Government Healthcare Programs paid LabTox over $1.8 million on these claims, which they would not have paid if they had known of the claims' falsity.

[Record No. 85-1, ¶ 257]  At a minimum, this is a sufficient reason to deny the motion to amend.  The proposed Second Amended Complaint declares that the allegations contained therein "are based on [Secamiglio's] own knowledge that is independent of other sources." [*Id.* ¶ 30] That is most assuredly not true if relying on the Government's findings.  More

importantly, defendants to a complaint cannot simply be swapped out to bolster one's claims. The unintended consequence of this drag-and-drop approach is evident.  By attempting to "narrow the claims" and "streamline the pleading" (i.e., copy the Government's work), the proposed complaint is filled with contradiction and incoherence.

Coburn's Plea Agreement is cited in and attached to the proposed Second Amended Complaint.   [Record No. 85-2] Within that signed plea agreement, Coburn admits the following: "While the Defendant caused LabTox to be held in the name of N.B., his partner, the Defendant controlled LabTox as its true owner and Chief Executive Officer."  [*Id.* ¶ 4(a)] He further agrees that: "Defendant used N.B. as a nominee to conceal his true ownership of LabTox, and caused the preparation of tax documents reporting that N.B. was the sole owner of the business and that N.B. received all of the income from the business."  [*Id.* ¶ 4(e)]  These admissions are consistent with the claims raised in the Amended Complaint.  But because they fail to line up with the Government's allegations against Coburn and Erica Baker, the proposed Second Amended Complaint undermines the plaintiff's own argument.

Secamiglio has no personal knowledge of many of the specific allegations now being raised, contradicts previous assertions and those supported by the evidence she has provided, and affirms the adequacy of the Amended Complaint while asking the Court to moot Baker's motion to dismiss.  This conduct is tantamount to bad faith.

## C.  Prejudice to the Opposing Party

"To deny a motion to amend, a court must find 'at least some significant showing of prejudice to the opponent.'"  *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (quoting *Moore*, 790 F.2d at 562).  The undersigned finds such a sufficient showing has been made here.

The Amended Complaint and proposed Second Amended Complaint focus on the same general scheme while taking a significantly different posture with respect to Baker's overall involvement—in large part because it accuses her of others' misconduct. Where the Amended Complaint attributed specific actions to Baker, the proposed Second Amended Complaint contains myriad amorphous and conclusory allegations that will nonetheless require considerable time and expense to address.[5] By substituting Baker as the defendant in claims brought by the Government against other individuals, it necessarily imposes undue prejudice.

Secamiglio's motion for leave to file a Second Amended Complaint will be denied based upon the findings outlined above.

### III.  Legal Standard

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts "construe the Complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (discussing Fed. R. Civ. P. 12(b)(6)). However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papsan v. Allain*, 478 U.S. 265, 286 (1986).  Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

Claims for fraud brought under the FCA must meet the higher pleading standard of Rule 9(b), which requires a party to "state with particularity the circumstances constituting

---

[5]    For example, Baker's social media posts are cited as evidence that she directed the submission of false claims because the posts amount to "an attempt to intimidate defendant Erica Baker into not cooperating with the Government. . . ."  [Record No. 85-1, ¶ 279]

fraud or mistake." Fed. R. Civ. P. 9(b).  This requires the plaintiff to allege "(1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Smith v. Gen. Motors LLC*, 998 F.3d 873, 883 (6th Cir. 2021) (quoting *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017)) (quotations omitted).  Further, the complaint must "specify the 'who, what, when, where, and how' of the alleged fraudulent scheme." *United States ex rel. Martin v. Hathaway*, 63 F.4th 1043, 1048 (6th Cir. 2023) (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)).

## IV.  Motion to Dismiss

The Amended Complaint alleges two substantive violations of the FCA: presenting false claims under 31 U.S.C. § 3729(a)(1)(A) and use of false records or statements under 31 U.S.C. § 3729(a)(1)(B).  A third claim alleges that the individual defendants conspired to cause LabTox to violate the FCA.  [Record No. 49, pp. 65–67]

### A.  Presentment Claim

Section 3729(a)(1)(A) imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."  To survive a motion to dismiss, a relator must plead "the presentment of at least one representative false claim with particularity in compliance with Rule 9(b)." *United States ex rel. Roycroft v. Geo Grp., Inc.*, 722 F. App'x 404, 406 (6th Cir. Jan. 3, 2018) (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510–11 (6th Cir. 2007)).

Baker contends that Secamiglio fails to identify any specific false claims that were presented, or caused to be presented, by Baker.  [Record No. 82] She highlights paragraphs 167–174 of the Amended Complaint as being the only paragraphs with allegations against

Baker and notes that most of those allegations either fail to identify a fraudulent claim or are inadequately supported "upon information and belief." [*Id.*]

Conversely, Secamiglio characterizes Baker's argument as "a fundamentally unfair reading of the Amended Complaint," and notes that Baker is included where the Amended Complaint refers to "Defendants." [Record No. 83, p. 1] She also emphasizes that the Amended Complaint "clearly alleges that all of the false claims . . . were done at the direction of Defendant Norma Baker." [*Id.* at 2]

### 1. "Defendants"

"The [FSA], in short, penalizes a person for his own acts, not for the acts of someone else." *United States v. Bornstein*, 423 U.S. 303, 312 (1976). Where an individual is named as a defendant, "general averments of fraud attributed to 'the defendants,'" fail to inform the individual of what he or she stands accused. *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992); *see United States v. Villaspring Health Care Ctr., Inc.*, No. 11-cv-043, 2011 WL 6337455, at *9 (E.D. Ky. Dec. 19, 2011) ("Rule 9(b) requires that, 'when the complaint accuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for individual acts of fraud.'" *Infocision Mgmt. Corp. v. Found. for Moral Law, Inc.,* No. 08-cv-1342, 2009 WL 650282, at *8 (N.D. Ohio Jan. 14, 2009)).[6] After all, "[t]he very purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without

---

[6]      Within this circuit, "the identity of employees within a corporate defendant" need not be identified for the corporation to face liability under the FCA. *Bledsoe*, 501 F.3d at 510–11. This is, in part, because a corporation is responsible for the false statements of its agents. *See id.* at 507. But this does not negate the requirement that an *individual defendant* be on notice of what she stands accused of, nor does it diminish the heightened pleading standard regarding the individual's alleged false statements.

subjecting themselves to discovery." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 599, 566 (6th Cir. 2003) (quotations omitted).  And the "clear" purpose of Rule 9(b) is to "provide defendants with a more specific form of notice as to the particulars of their alleged misconduct." *Bledsoe*, 501 F.3d at 503.

Were the Court to accept Secamiglio's argument and implicitly include Baker in all references to "Defendants," it would entirely undermine the text of the statute, as well as the heightened pleading requirements of Rule 9(b).  As this Court and others have previously noted, blanket allegations of wrongdoing by "Defendants" do not supplant the need to attribute individual misconduct to individual defendants.  Therefore, the undersigned will attribute only those generic references to a particular individual or individuals where context deems such attribution appropriate.

The Court begins by reviewing the specific allegations asserted against Baker, the majority of which are contained in Part VIII of the Amended Complaint entitled "**Norma Hope Baker's Involvement in All of the False Claim Activity**."  [Record No. 49, ¶¶ 167–174] Initially, it is noteworthy that each of these allegations is asserted "upon information and belief."  However, fraud claims cannot be grounded on "information and belief" without setting forth a factual basis for such belief.  *See Smith*, 998 F.3d at 883; *see infra*, Section IV.A.2.  The factual basis for one's belief becomes suspect when, as is the case here, the complaint sets forth contradictory allegations.

Paragraph 167 asserts the belief that "Defendant Ron Coburn has informed Defendant [Norma] Hope Baker that Defendant LabTox makes false claims . . . ."[7]  [Record No. 49, ¶

---

[7]      The allegation incorrectly refers to Defendant "Erica Hope Baker."

167]  "To inform" means "to communicate knowledge to" and "make acquainted."  *Webster's Third New International Dictionary* 1160 (3d ed. 1993).  Implicit in this allegation is that prior to Coburn informing Baker, she was without the knowledge of LabTox making false claims. Paragraphs 172 and 173 seem to reinforce this conclusion, both of which state that Baker "became aware" that fraudulent claims were being processed.  [Record No. 49, ¶¶ 172, 173] The phrasing again points to the acquisition of knowledge occurring after the fact.

The Amended Complaint also addresses Baker's ownership of LabTox: "Defendant Norma Baker and Defendant Ron Coburn have an agreement that LabTox, LLC belongs to Ron Coburn, but that LabTox, LLC will be listed as being owned by Norma Baker for the specific purpose of defrauding potential creditors. . . ."  [*Id.* ¶ 168]  This allegation is consistent with earlier parts of the Amended Complaint in which Coburn is described as "the Chief Executive Officer" and "beneficial owner of LabTox, LLC, despite holding out to the public that LabTox, LLC is owned by Norma Hope Baker."[8]  [*Id.* ¶ 7]  Perhaps even more tellingly, Coburn admits this fact in the Plea Agreement he signed in the related criminal case.[9]

---

[8]    A beneficial owner is "[o]ne recognized in equity as the owner of something because use and title belong to that person, even though legal title may belong to someone else." *Beneficial Owner*, Black's Law Dictionary (11th ed. 2019).  Straw ownership is characterized by "lack of possession of the property and no exercise of dominion or control over it." *United States v. Totaro*, 345 F.3d 989, 995 (8th Cir. 2003).

[9]    While Coburn's Plea Agreement is not relied upon in resolving this motion to dismiss, the undersigned may nonetheless consider it. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

After depicting Baker as little more than a straw owner for LabTox, the Amended Complaint proceeds to claim, upon information and belief, that "Defendant Norma Baker has, as owner, directed that LabTox and Defendants Coburn and Erica Baker continue to submit false claims . . . ."[10]  [*Id.* ¶ 170]  Likewise, that "with the knowledge, consent and approval of Defendant Norma Baker, Defendant Ron Coburn has opened and maintained financial accounts in Micronesia. . . ."  [*Id.* ¶ 171]  Having already alleged the ownership structure of LabTox to be a legal fiction, the Amended Complaint suggests that Baker, "as the sole owner of Defendant LabTox, LLC," retained Coburn and Erica Baker after the 2019 OIG settlement because, from the very beginning, the false claims were made "in accordance with Defendant Baker's instructions."  [*Id.* ¶ 174]

According to these allegations, Baker is both: (1) the straw owner of LabTox, who only learned of the false claim scheme from Coburn; and (2) the sole owner of LabTox, who exercised functional control over the company and directed all false claim submissions going back to 2014.[11]  These allegations are supported upon information and belief, which requires the relator to set forth a factual basis for those beliefs—a task that will be particularly challenging given the contradictory nature of the assertions.

### 2.  "Upon Information and Belief"

---

[10]    The quoted material has been corrected to remove obvious, nonmaterial, typographical errors.

[11]    The Amended Complaint alleges that LabTox engaging in the false claims that led to the 2019 OIG settlement was at the direction of Baker.  [Record No. 49, ¶ 174]  The false claims cited in the OIG settlement agreement date back to January 2014.  [Record No. 49-1]

FCA claims may not be based on speculation and conclusory allegations. *See Sanderson*, 447 F.3d at 878. It is not enough to ground fraud claims on "information and belief" without setting forth "a factual basis for such belief." *Id.*; *see Smith*, 998 F.3d at 885 ("[E]vidence showing the requisite knowledge for fraud cannot escape a motion to dismiss by resting on information and belief without supporting facts."). The Amended Complaint does not accuse Baker of individually submitting false claims, but rather directing Coburn and Erica Baker to do so on behalf of LabTox. [Record No. 49, ¶¶ 170, 174] The representative false claims factually support LabTox's liability, not Baker's. Secamiglio must show that her asserted beliefs regarding Baker's involvement have a factual basis of support.

Baker's legal ownership of LabTox is not contested, but that alone does not provide factual support for the claim that she *directed* others to submit false claims.[12] To the contrary, the Amended Complaint factually supports the contention that Coburn was the beneficial owner of LabTox and the individual exercising control. Simply put, the allegations against Baker, alleged upon information and belief, are without the necessary factual basis of support.

Secamiglio's Amended Complaint adequately meets and exceeds the pleading requirements needed to bring an FCA presentment claim against LabTox, Coburn, and Erica Baker. However, because it fails to do so with respect to Norma Hope Baker, Count One will be dismissed.

## B. Records Claim

---

[12]     Baker's use of the fraudulently acquired funds "to lead an extravagant lifestyle," similarly does not provide factual support to the belief that Baker was directing the false claims be made. [*See* Record No. 49, ¶ 174.]

The second claim against Baker is brought under § 3729(a)(1)(B), which imposes civil liability on any person who "makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  Secamiglio raises the same arguments asserted regarding Count One and further suggests that the United States' decision not to dismiss the case with respect to Baker "demonstrates some level of approval of this continued prosecution by Relator. . . ."  [Record No. 83, p. 10]

The Court is bound to follow the pleading standards set forth in Rules 8(a) and 9(b). Therefore, when determining whether the Amended Complaint has been adequately pleaded, the United States' approval is irrelevant regardless of whether it is tacit, implied, or express. The Amended Complaint fails to properly allege that Norma Hope Baker violated § 3729(a)(1)(B).  Therefore, Count Two also will be dismissed.

## C.  The Conspiracy Claim

The third claim against Baker alleges that she participated in a conspiracy to violate the FCA.  *See* 31 U.S.C. § 3729(a)(1)(C).  To survive a motion to dismiss, a relator must "plead facts showing that there was a plan or agreement 'to commit a violation of' one or more of the FCA subsections."  *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 917 (6th Cir. 2017) (quoting 31 U.S.C. § 3729(a)(1)(C)).  This must be done in accordance with Rule 9(b)'s heightened pleading standard.  *See Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) ("Complaints alleging FCA violations must comply with Rule 9(b)'s requirement that fraud be pled with particularity . . . .").  "[I]t is not enough for relators to show there was an agreement that made it *likely* there would be a violation of the FCA; they must show an agreement was made *in order to* violate the FCA."  *Ibanez*, 874 F.3d at 917.

- 15 -

Here, Baker argues that the conspiracy allegation fails because the Amended Complaint: (1) lacks the requisite specificity under Rule 9(b); (2) fails to allege a substantive FCA violation; and (3) fails to properly allege an agreement.  [Record No. 82]  Baker also asserts that a conspiracy claim is barred by the intracorporate conspiracy doctrine.  [*Id.*]

### 1. Substantive Violation Requirement

The Court first addresses whether a substantive FCA violation is required to carry a conspiracy claim.  The Sixth Circuit recognized in a recent unreported decision that "[c]onspiracy under the FCA is derivative of the substantive claims of submitting a false claim to the government or creating a false record."  *United States v. Wal-Mart Stores E., LP*, 858 F. App'x 876, 879 (6th Cir. June 4, 2021).  In that case, the relator's failure to adequately plead an underlying FCA claim necessarily doomed the related conspiracy claim.  The Sixth Circuit's reasoning does not suggest that a defendant must be subject to individual liability for a substantive FCA claim to be liable under the FCA's conspiracy provision.

As outlined above, the Amended Complaint fails to adequately plead that Baker is subject to individual liability for violating either the false claim or false record provisions of the FCA.  But this determination does not negate the fact that the Amended Complaint adequately alleges FCA violations against LabTox, Coburn, and Erica Baker—violations that have since been adjudicated.  The Sixth Circuit merely found that an FCA conspiracy claim fails where no underlying violation can support it.  And that situation is not before this Court.  Baker need not be individually liable of underlying fraud claims to face potential liability for participating in a larger conspiracy.  *See, e.g.*, *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) (noting that the FCA's conspiracy provision "lacks a presentment

element, thus presentment of a false claim need not be proven nor pled to prevail on a False Claims Act conspiracy charge").

## 2. Intracorporate Conspiracy Doctrine

Assuming the doctrine of intracorporate conspiracy applies in FCA cases, it "provides that members of the same legal entity acting within the scope of their employment cannot form a conspiracy as two separate 'people.'" *Marvaso v. Sanchez*, 971 F.3d 599, 607 (6th Cir. 2020) (citing *Jackson v. City of Cleveland*, 925 F.3d 793, 819 (6th Cir. 2019)). The doctrine also recognizes a broad exception "where the defendants were alleged to have been acting outside the scope of their employment." *Jackson*, 925 F.3d at 819.

The facts as alleged here raise two key questions: (1) Is a non-employee straw owner shielded by the intracorporate conspiracy doctrine? (2) Where the sole purpose of straw ownership is to obscure the true ownership of privately held assets, does it fall within the scope of employment? And neither question appears to have been addressed directly within this Circuit.

The Court finds it unlikely that straw ownership suffices to confer the protections of the intracorporate conspiracy doctrine, at least as it pertains to the facts alleged in this case. While the doctrine posits that a corporation and its agents constitute a single entity, the conspiracy to obscure true ownership logically precedes the corporation's formation.[13] Thus, a conspiracy to obscure ownership is initiated by individuals, acting independently of the yet-to-be-formed corporate entity.

---

[13]    This is not so when the ownership of a preexisting corporation is transferred to a straw owner.

Regarding the second question, the Sixth Circuit has held that "corporate actors might be beyond the scope of their employment where the aim of the conspiracy exceeds the reach of legitimate corporate activity." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 840 (6th Cir. 1994). Here, the Amended Complaint alleges that the purpose of Baker's straw ownership was to defraud potential creditors in the event Coburn's illegal activity were to be revealed. That does not fall within the reach of legitimate corporate activity. Moreover, if the purpose of the corporate structure is the product of a conspiracy to shield *private* assets, it cannot be seen as falling within the scope of employment. Thus, the undersigned concludes that Baker is not shielded by the intracorporate conspiracy doctrine because the alleged conspiracy predates the corporation and because the alleged conspiracy alleged falls within the scope-of-employment exception.

### 3.  Sufficiency of the Pleading

A conspiracy claim against Baker can only be maintained if the Amended Complaint sets forth allegations of civil conspiracy to violate the FCA, pleaded with the requisite specificity of Rule 9(b). A civil conspiracy consists of "an agreement between two or more persons to injure another by unlawful action." *United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). "Each conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Id.* (quoting *Hooks*, 771 F.2d at 944). Rather, "[a]ll that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id.* (quoting *Hooks*, 771 F.2d at 944).

Baker argues that the Amended Complaint fails to properly allege an agreement. [Record No. 82, p. 11]  This argument misses the mark, however.  "Express agreement is not necessary to prove civil conspiracy."  *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000). "Tacit understanding, created and executed over time, is enough to constitute an agreement even absent personal communication."  *Direct Sales Co. v. United States*, 319 U.S. 703, 714 (1943).  Secamiglio has sufficiently alleged that Baker and Coburn established LabTox and listed Baker as the owner, despite having an agreement that Coburn was the true owner.[14]  The Amended Complaint adequately pleads with Rule 9(b) specificity that Coburn and Baker conspired to create this legal fiction, and maintained it over time, for the purpose of obscuring ownership and shielding assets in the event the FCA violations were discovered.

In summary, construing these allegations in the light most favorable to Secamiglio, and drawing all reasonable inferences in her favor, the FCA conspiracy claim survives Baker's Motion to Dismiss.

## V.  Motion for Order Directing Deposition

Secamiglio has also moved for an order directing the deposition of Erica Baker. [Record No. 86]  At this point in the litigation, that motion will be denied as premature.  Baker has not yet had an opportunity to file an Answer and the Court has yet to enter a Scheduling Order.

## VI.  Conclusion

Based on the foregoing analysis and discussion, it is hereby **ORDERED** as follows:

---

[14]     Public record also supports this allegation.  [*See* Record No. 85-2, ¶ 4(a), (e).]

1.      Relator Caitlin Secamiglio's motion for leave to file a Second Amended Complaint [Record No. 85] is **DENIED**.

2.      Defendant Norma Baker's motion to dismiss [Record No. 82] is **GRANTED**, in part, and **DENIED**, in part, consistent with the Memorandum Opinion and Order.

3.      Relator Caitlin Secamiglio's motion for an order directing the deposition of Erica Baker [Record No. 86] is **DENIED**.

Dated: May 20, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky